UNITED STATES BANKRUPTCY COURT

FOR THE WESTERN DISTRICT OF MICHIGAN

In re:

CRAIG ALAN and LYNDA SUE HERREMANS,                    Case No. 15-01567

                       Debtors.                    Chapter 12

_____/          Honorable James W. Boyd

## CHEMICAL BANK'S MEMORANDUM IN SUPPORT OF
## MOTION TO DISMISS BANKRUPTCY CASE

**I.      INTRODUCTION**

      Chemical Bank, successor-by-merger to Northwestern Bank (hereinafter "Chemical" or "the Bank") submits this memorandum in support of its *Motion to Dismiss* filed on March 27, 2015 at Docket No. 11 and pursuant to the opportunity provided by this Court to brief the issue of the meaning of the phrase "request for relief" as further described below.

      The Bank's Motion to Dismiss was filed on the basis that the Debtors do not qualify to be Debtors pursuant to 11 USC 109(g)(2), for the reason that this bankruptcy case was filed within 180 days of the Debtors requesting and obtaining the voluntary dismissal of a prior case following the filing of a request for relief from the automatic stay provided by 11 USC 62.  At a hearing conducted on May 6, 2015, this Court ostensibly narrowed the issue of analysis on the Motion to Dismiss to what qualifies as a "request for relief" under the language of §109(g)(2). The Bank files this memorandum in support of its position that such a "request for relief" need not be in the form of a pleading entitled "motion"  nor as suggested by Debtors in their briefing. The Bank hereby incorporates by reference the facts as stated in the *Stipulation of Facts Related to Chemical Bank's Motion to Dismiss* filed on May 15, 2015 at Docket No. 32.

II.     **ISSUE**

Does the "request for relief" which is required to precede a voluntary dismissal in order for 11 USC §109(g)(2) to apply need to be in the form of a pleading entitled "motion"? Chemical submits the answer is no.

III.    **DISCUSSION AND ANALYSIS**

    *A.     The Confirmed Plan is the Request For Relief*

In the First Bankruptcy Case, Chemical actively pursued its rights under its loan documents prior to the bankruptcy filing, and continued to do so within the confines of the Bankruptcy Code, subsequent to the bankruptcy filing. Prior to the bankruptcy, Chemical had exercised its state law remedy of seeking the foreclosure of a certain mortgage granted to it by the Debtors. Subsequent to the filing of the First Bankruptcy Case, Chemical continued to protect its interests through the filing of numerous pleadings and ongoing negotiations with the Debtors. Those negotiations culminated in an agreement between the Bank and the Debtors which established not only a payment structure, but the circumstances under which the Bank would be entitled to relief from the stay. In the spirit of good faith negotiation and rather than presenting the issues to the Court by motion, an agreement was presented to the Court via the *Fourth Pre-Confirmation Amendment to Debtors' Chapter 12 Plan* which was filed on February 24, 2014 at DN 141. In addition to detailing Debtors' debt repayment terms, the *Fourth Pre-Confirmation Amendment to Debtors' Chapter 12 Plan* states on Page 7:

> "If Debtors Default in the terms of the Plan, which default continues for thirty (30) days after notice of same, then, upon the filing of an affidavit of default with the Court by Northwestern Bank, it shall be automatically entitled to an order lifting the automatic stay without the necessity of any hearing."

The inclusion of this provision in the Plan arose from good faith negotiations between the parties during which time, in reliance on those negotiations, Chemical refrained from filing a motion for

relief or otherwise aggressively seeking sale or disposition of its collateral. The entry of the resulting agreement in the Court's docket, as contained within the *Fourth Pre-Confirmation Amendment*, fulfills the character of a "request for relief" under §109(g), which provides:

> "(g) Notwithstanding any other provisions of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if … (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title."   11 USC 109(g)(2)

In drafting the statutory language, Congress could have required the filing of a *motion*, but it did not. Instead, it broadened the scope of the requirement by using the phrase "request for relief." In general use, a request for relief means any request to a court with the legal authority to determine the rights or liabilities of one or more parties. Any matter submitted to a Court for approval is a "request for relief"; it may bear any number of titles, including but not limited to a motion, petition, application, stipulation, claim, proof of claim, complaint, plan of reorganization, request or notice.

Courts frequently look past the form of a document to ascertain what relief is actually being sought. In adversary proceedings before the Bankruptcy Court, Bankruptcy Rule 7008(e) directs that "Pleadings are to be construed to do justice." See *Alamo Water Supply Corp. v. City of San Juan*, 90 F.3d 910 (5th Cir. 1996) (stating that as a "general matter, the caption on a pleading does not constrain the court's treatment of a pleading"); *In re Hubbard*, 333 B.R. 373 (S.D. Tex. 2005) (finding that all pleadings must be construed to do substantial justice). There are innumerable instances where courts look to the content of the document and the relief

requested to construe the pleading, rather than the title of the document.[1]

Under the Bankruptcy Rules, the filing of a motion is accompanied by a notice requirement and an opportunity for hearing. Such requirements are moot under our facts since the Debtors themselves negotiated the agreement and filed the pleading containing it; it would be nonsensical to suggest they were not on notice of the Bank's right to relief from stay in the event of default.

In other words, the agreement between Chemical and the Debtors meets or exceeds the requirement in §109(g)(2) that there be a "request for relief from the automatic stay." Here, not only was there a request for relief, there was also a contractual agreement with the Debtors for such relief via the confirmed Plan. Because the terms had been agreed upon and the Bank believed its interests to be protected, the Bank did not further object to the amended Plan, and the Plan was confirmed by the Court. When the Debtors defaulted in their plan payments, the automatic right to receive an order lifting the stay became operative.

### B.    *The Affidavit of Default*

The Debtors argue that the Bank's "request for relief" was made via the filing of the Bank's Affidavit of Default, which occurred on January 15, 2015, eight days after the Debtors' moved for voluntary dismissal, and many weeks following the events of default under the Plan. This argument fails based on the unambiguous language in the Plan Amendment stating that the Bank "…shall be ***automatically entitled*** to an order lifting the automatic stay without the necessity of any hearing." This request for relief contained within the Plan was subject to Court

---

[1]    *Askanase v. Lawley (In re Lawley)*, 2006 WL 2090209 (Bankr. S.D. Tex. June 30, 2006) (construing a Bankruptcy Rule 8015 motion to amend as a Bankruptcy Rule 9023 motion to amend); *In re Sherf*, 135 B.R. 810 (S.D. Tex. 1991) (creditors' motion for relief from stay could properly be construed as a motion to extend the time for filing a complaint to determine the dischargeability of a debt); *Nat'l. Ecological Found. v. Alexander*, 496 F.3d 466 (6th Cir. 2007) (holding that courts within the Sixth Circuit may construe an untimely Rule 59(e) motion to alter or amend a judgment as a motion for relief from judgment under Rule 60(b))

approval, and was in fact approved.  Therefore, the filing of the Affidavit of Default on January 15, 2015 was not a "request for relief"; it was simply a procedural mechanism which was undertaken to cause the Court to issue the relief that had already been requested, approved by the Court, and held in abeyance pending the possibility of a future default by the Debtors.

There is a well-established public policy favoring settlement of disputes; the policy is deeply embedded in our laws and encouraged by our courts.  Settlement conserves resources, relieves crowded dockets, and spares the parties time, expense, and risk of undesirable outcomes. Indeed, procedural rules promote settlement from the outset of a contested matter.   Bankruptcy Rule 7016, for example, recognizes facilitation of settlement as an objective of the pretrial conference.  Bankruptcy Rule 7026(f) directs parties to confer "as soon as practicable" to discuss "the possibilities for a prompt settlement or resolution of the case."   The complexity of debtor/creditor relationships and the risks involved for those parties appropriately encourages compromise and good faith bargaining between them.

Although factually distinguishable, the case of *In re Excelsior Henderson Motorcycle Manufacturing Co.*, 273 B.R. 920 (S.D. Fla. 2002) contains similarities to the matter before the Court and is instructive.  A Chapter 11 debtor entered into a post-petition debt restructuring agreement with a secured creditor that provided that the debtor would not oppose relief from the stay relief in any future bankruptcy proceeding. The agreement was incorporated into the Chapter 11 plan, which was subsequently confirmed. After the debtor defaulted on the plan, the creditor began foreclosure proceedings and the debtor filed a second Chapter 11.  The question in the subsequent bankruptcy filing was whether the waiver of stay in the first bankruptcy case was enforceable.  The court in *Excelsior* found the waiver enforceable and granted relief from the stay because the debtor had bargained for the waiver and had received consideration.  The court

also found it significant that the exchange had been made in the course of a prior Chapter 11 plan.  In addition, the court noted that its holding was consistent with the policy of favoring out-of-court settlements.[2]

Imagine the consequences if, in applying §109(g), the Court must require the filing of a pleading specifically entitled "Motion."  Secured creditors would be forced to file a motion for relief from the §362 automatic stay in all cases, whether it is appropriate under the particular circumstance or not, simply to protect themselves from a potential voluntary dismissal and refiling.  Such an extreme outcome would discourage cooperative negotiation between the parties and is wasteful of the parties' and the court's resources when a negotiated plan can often be achieved.

11 USC §105(a) directs "the court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."  This section specifically states that the form in which an issue is raised does not preclude the court from effectuating a just result.  Many courts have utilized §105(a) in connection with a dismissal under §109(g). See, for example,  *In re Robinson*, 198 B.R. 1017 (N.D. Ga. 1996) ("The usual remedy for a bad faith filing is a dismissal pursuant to §109(g) … further authority for such a dismissal arises under §105(a), which empowers this court to issue any order, process or judgment which is necessary or appropriate to prevent abuse of the bankruptcy system.");

---

[2]  Hon. James D. Walker, Jr., *ARTICLE: Bankruptcy*, 54 Mercer L. Rev. 1351 (2003).

*Stathatos v. United States Trustee (In re Stathatos)*, 163 B.R. 83, 87-88 (N.D. Tex. 1993) (district court found that the bankruptcy court acted within its discretion to enjoin further filings to prevent abuse of the bankruptcy process under 11 U.S.C. §105(a)); *In re Earl*, 140 B.R. 728 (N.D. Ind. 1992) (invoking §105 to bar serial Chapter 13 filer from further petitions for a specified period to prevent abuse of the bankruptcy process); *Gonzalez-Ruiz v. Doral Fin. Corp. (In re Gonzalez-Ruiz)*, 341 B.R. 371 (B.A.P. 1st Cir. 2006) (An order barring the debtors from filing another petition for 180 days was affirmed as the ban was to prevent an abuse of process); *In re Bulson*, 327 B.R. 830 (W.D. Mich. 2005) (Judge Jeffrey R. Hughes revoked his confirmation of a Chapter 13 plan pursuant to court's own authority under §105(a), where debtor's counsel had made a fraudulent representation to the court); *In re Pertuset*, 492 B.R. 232 (S.D. Ohio 2012) (court found it had sufficient cause to impose a two-year bar to refiling under 11 USC §105(a) and §349(a)).  Here, any finding and conclusion that the "request for relief" is something other than as provided in the confirmed Plan is to place form over substance and to thwart the intent of the parties who clearly intended the Plan to mean what it says.

**IV.    CONCLUSION**

The request for relief which is required to precede a voluntary dismissal in order for 11 USC §109(g)(2) to apply need not be in the form of a motion or an affidavit of default; the entry of the agreement between the Debtors and the Bank in the Court's docket, as contained within the *Fourth Pre-Confirmation Amendment*, clearly fulfills the character of a request for relief under §109(g).

The Bank believes the Debtors seek to manipulate the automatic stay and circumvent the consequences of their default under the Plan in the First Bankruptcy Case.  Under both §105(a) and §109(g)(2),  this Court may act as necessary or appropriate to remedy this result and carry out the provisions and objectives of the Bankruptcy Code.   More specifically, **"No provision of**

**this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process."** (Emphasis added)  Under the Bankruptcy Code and relevant case law, the Court should dismiss this case in order to protect the rights of the Bank and other creditors gained in reliance on the agreement and confirmed Plan.

Further, enforcement of the agreement as set forth in the Plan is in line with the public policy goal of encouraging out-of-court settlements.  In the First Bankruptcy Case, the Debtors gained the benefit of their negotiated bargain by receiving a lengthy reprieve from creditor action.  Fairness requires that the Bank now receive the benefit of its bargain as well.

Chemical Bank respectfully requests that this Honorable Court enter an order dismissing this case and prohibiting the filing of another bankruptcy case for 180 days from the date of said order of dismissal in accordance with §109(g)(2) of the Bankruptcy Code.

Respectfully submitted,

Dated:  May 15, 2015

/s/ Gregory L. Jenkins
Gregory L. Jenkins (P54973)
Kuhn Rogers PLC
412 S. Union
Traverse City, MI 49684
231.947.7900
gljenkins@krlawtc.com