UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

CRAIG ALAN & LYNDA SUE HERREMANS,

      Debtors.

_____/

Case No. BG 15-01567
Chapter 12

**OPINION DENYING CREDITORS'**
**MOTIONS TO DISMISS CHAPTER 12 CASE**

Appearances:

Jeffrey C. Alandt, Esq., Traverse City, Michigan, attorney for Craig and Lynda Herremans.

Gregory L. Jenkins, Esq., Traverse City, Michigan, attorney for Chemical Bank.

Peter A. Teholiz, Esq., Lansing, Michigan, attorney for American Farm Mortgage
    Company.

Laura J. Genovich, Esq., Grand Rapids, Michigan, Chapter 12 Trustee.

I.      INTRODUCTION AND ISSUE PRESENTED.

Craig and Lynda Herremans (the "Debtors") filed their first chapter 12 case in August of 2013. After defaulting under the terms of their confirmed chapter 12 plan, they voluntarily dismissed that case, then re-filed the present case thirteen days later. Secured creditors American Farm Mortgage Company ("AFM") and Chemical Bank[1] ("Chemical" or collectively with AFM, the "Creditors") filed motions to dismiss this chapter 12 case, arguing that the Debtors sought and obtained the voluntary dismissal of their prior case

---

[1]    Chemical Bank is the successor-by-merger to Northwestern Bank. For ease of reference, Chemical Bank and Northwestern Bank are referred to herein as "Chemical."

following the filing of the Creditors' requests for relief from the automatic stay.  Therefore, pursuant to § 109(g)(2) of the Bankruptcy Code,[2] the Creditors assert that the Debtors are not eligible to be debtors in their current chapter 12 case.  The Debtors disagree, arguing that the Creditors' requests for relief from stay were filed after the Debtors moved to voluntarily dismiss their prior case.

For the reasons set forth below, the Court finds that the Debtors did not seek and obtain dismissal of their prior case "following the filing of a request for relief from the automatic stay."  Accordingly, § 109(g)(2) does not make the Debtors ineligible for relief in their current chapter 12 case and the Creditors' motions to dismiss shall be denied.

## II.    JURISDICTION.

The Court has jurisdiction over this chapter 12 bankruptcy case.  28 U.S.C. § 1334. This bankruptcy case and all related proceedings have been referred to this Court for decision.  28 U.S.C. § 157(a); L. Civ. R. 83.2(a) (W.D. Mich.).  The matter before the Court is a core proceeding and this Court may enter a final order.  28 U.S.C. § 157(b)(2)(A) (matters concerning administration of the estate) and (O) (other proceedings affecting the debtor-creditor relationship); accord In re Johnson, 2015 WL 3764728, *1 (Bankr. W.D. Mich. 2015) (motion to dismiss raised "the question of the [d]ebtor's eligibility for relief under title 11," and was "at the core of the Bankruptcy Court's authority").

---

[2]    The Bankruptcy Code is set forth in 11 U.S.C. §§ 101-1532 inclusive.  Specific provisions of the Bankruptcy Code are referred to in this opinion as "§ ___."

### III.   FACTS AND PROCEDURAL HISTORY.

With one minor exception,[3] the facts in this contested matter are not disputed and have been stipulated to by the parties.  (See Stipulated Facts for American Farm Mortgage's Motion to Dismiss, Dkt. No. 31; Stipulation of Facts Related to Chemical Bank's Motion to Dismiss, Dkt. No. 32.)  The Debtors filed their prior chapter 12 case on August 29, 2013.   (See Case No. 13-06904.)  AFM is a secured creditor of the Debtors and holds a first mortgage covering most of the Debtors' real estate as well as a security interest in the Debtors' crops and certain equipment and fixtures.  (Dkt. No. 31, at ¶ 2.) Chemical Bank is also a secured creditor and holds security interests in several parcels of the Debtors' real estate, farm and business equipment, inventory, accounts receivable, and stock.  (Dkt. No. 32, at ¶ 2.)

After the filing of the Debtors' bankruptcy case, the Debtors and AFM entered into negotiations regarding the treatment of AFM's claims.   The parties ultimately filed a Stipulation for Adequate Protection and on Treatment of Claim (the "Stipulation") with the Court on November 22, 2013.  (Dkt. No. 31, at ¶ 3.)  The Stipulation required the Debtors to make various payments to AFM on December 1, 2013,[4] February 15, 2014, August 15, 2014, October 20, 2014, and January 1, 2015.  (Dkt. No. 31, at ¶ 4; see also Case No. 13-06904, Dkt. No. 53, at ¶ 9.a.)   The Debtors and AFM subsequently filed a First Amendment to Stipulation for Adequate Protection and Treatment of Claim that changed the date of the February 2014 payment to December 1, 2014.  (Dkt. No. 31, at ¶ 5.)

---

[3]     The parties disagree on the characterization of the purpose of filing the post-confirmation affidavits of default.  This issue is addressed in greater detail below.

[4]     The Stipulation states that this payment was intended to "bring all of AFM's loans current."  (Case No. 13-06904, Dkt. No. 53, at ¶ 9.a.)

The Stipulation also specifically states that "any payments [that] become due or obligations required by the Debtors [that] become due prior to confirmation of a chapter 12 plan . . . shall be deemed to be adequate protection." (Case No. 13-06904, Dkt. No. 53, at ¶ 15.)  The Stipulation, as amended, was attached to and incorporated in the Debtors' Chapter 12 Plan (the "Plan"), which was confirmed by this Court in an order entered on March 4, 2015.  (Dkt. No. 31, at ¶ 8-9.)  Under the payment schedule, as adjusted by the amended stipulation, only the December 2013 payment was due prior to confirmation.[5]  Finally, in the event of a default in payments under the Stipulation, the agreement provided as follows:

> If the Debtors default in the terms of this Stipulation, which default continues for 21 days after notice of same, then, upon the filing with the Court of an affidavit of default by AFM, it shall be automatically entitled to an order lifting the automatic stay, without the necessity of any hearing.

(Dkt. No. 31, at ¶ 6.)

The Debtors also entered into negotiations with Chemical regarding the terms of repayment of the amounts owed to Chemical and the rights of the parties in the event of default.  (Dkt. No. 32, at ¶ 3.)  The agreement that was reached by the Debtors and Chemical was incorporated in the Debtors' Fourth Pre-Confirmation Amendment to Debtors' Chapter 12 Plan.  (Dkt. No. 32, at ¶ 4.)  Under the agreed upon Plan provision, the Debtors were required to make payments to Chemical in October and November 2014, and semi-annually thereafter.  (Dkt. No. 32, at ¶ 5 & 7.)  In the event of default, the Plan provision stated as follows:

> If Debtors default in the terms and conditions of the Plan, which default continues for thirty (30) days after notice of same, then, upon the filing of an affidavit of default with the Court by Northwestern [now Chemical] Bank, it

---

[5]    It is not clear from the record whether this payment was made.

shall be automatically entitled to an order lifting the automatic stay, without the necessity of a hearing.

(Dkt. No. 32, at ¶ 6.)

After confirmation of their Plan, the Debtors defaulted in their payment obligations to both AFM and Chemical.  (Dkt. No. 31, at ¶ 10-23; Dkt. No. 32, at ¶ 8-13.)  Some of these defaults were cured with late or partial payments; others were not.  (Id.)  AFM gave the Debtors notice that they were in default under the terms of the Plan on four occasions. (Dkt. No. 31, at ¶ 11, 16, 19, 24.)  Although some of the defaults persisted for more than twenty-one days, AFM did not file an affidavit of default with the Court until January 9, 2015.  (Dkt. No. 31, at ¶ 26.)  Chemical also provided Debtors' counsel with a notice of default on November 21, 2014, but did not file its affidavit of default with the Court until January 15, 2015.[6]  (Dkt. No. 32, at ¶ 9, 15.)

On January 7, 2015, after receiving notices of default from both ASM and Chemical, but prior to either Creditor filing their affidavit of default with the Court, the Debtors filed a motion to voluntarily dismiss their bankruptcy case.  (Dkt. No. 31, at ¶ 25; Dkt. No. 32, at ¶ 14.)  The Court held hearings on the Debtors' motion to dismiss and the Creditors' requests for orders lifting the stay on February 17, 2015.  After the hearings, the Court entered orders lifting the stay as to both ASM and Chemical on February 23, 2015.  (Dkt. No. 31, at ¶ 28; Dkt. No. 32, at ¶ 17.)  It also entered an order dismissing the Debtors' case on March 6, 2015.  (Dkt. No. 31, at ¶ 29; Dkt. No. 32, at ¶ 18.)

---

[6]     As noted above, the stipulations of facts filed in connection with the pending motions to dismiss noted the parties' disagreement on the proper characterization of the purpose of the affidavits.  The Debtor asserts that the purpose of the affidavits "was to obtain an Order for Relief from the automatic stay."   The Creditors believe that the purpose was "to comply" with the provisions of the Stipulation and Plan and "to obtain an automatic lift of stay and an order confirming same."  (Dkt. Nos. 31 & 32.)

The Debtors filed their current chapter 12 case on March 19, 2015.  (Dkt. No. 31, at ¶ 30; Dkt. No. 32, at ¶ 19.)  Both ASM and Chemical filed motions to dismiss the case alleging that the Debtors are not eligible to be debtors under § 109(g)(2).  The Court held hearings on the Creditors' motions to dismiss on May 6, 2015, and subsequently took the matters under advisement.

## IV.   DISCUSSION.

The Creditors' motions to dismiss this chapter 12 case were filed pursuant to § 109(g)(2), which provides:

> (g)  Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if –
> . . . .
>> (2) the debtor requested and obtained the voluntary dismissal of the case following the filing of a request for relief from the automatic stay provided by section 362 of this title.

11 U.S.C. § 109(g)(2).  In this case, there is no dispute that the Debtors are family farmers who voluntarily dismissed their prior chapter 12 case in the 180 days prior to the filing of their current case.  The sole issue before the Court is whether the Debtors requested and obtained the voluntary dismissal of their prior case "following the filing of a request for relief from the automatic stay provided by section 362 of this title."  Resolution of this issue involves two determinations:  (1) what action by the Creditors constituted the "filing of a request for relief" from stay in the prior case, and (2) whether the Debtors' voluntary dismissal was requested and obtained following that request.

A. <u>What Constituted the "Filing of a Request for Relief from the Automatic Stay" in the Prior Case?</u>

The Creditors argue that the Stipulation, as incorporated into the confirmed Plan,

and/or the agreed provisions of the Plan should be deemed "requests for relief from the automatic stay" because they provide that in the event of a uncured default in payments, and upon the filing of an affidavit with the Court, the Creditors would be entitled to an order lifting the stay. Although the Creditors acknowledge that the filing of an affidavit of default with the Court was a prerequisite to obtaining a future order terminating the stay, AFM characterizes this step as "merely an administrative item;" Chemical portrays this step as a "procedural mechanism which was undertaken to cause the Court to issue the relief that had already been requested, approved by the Court, and held in abeyance pending . . . default . . . ." The Debtors disagree with these characterizations, and argue that the affidavits of default, which were filed by the Creditors after the Debtors requested voluntary dismissal, were the requests for relief from stay in the prior case. The Court has carefully considered the parties' arguments and concludes that the filing of the affidavits of default constituted the request for relief in the prior case. It was the affidavits, and not the Stipulation or agreed Plan provisions, that triggered the issuance of orders terminating the stay and which allowed the creditors to exercise their rights under state law.

Upon the filing of a bankruptcy petition, § 362 automatically stays several actions, including proceedings against the debtor, the enforcement of judgments against the debtor or property of the estate, and any acts to obtain possession of property of the estate. 11 U.S.C. § 362(a); see In re Robinson, 764 F.3d 554, 559 (6th Cir. 2014) ("filing for bankruptcy stays a number of enforcement actions against the debtor, his or her property, and property of the estate"). "The automatic stay is among the most fundamental debtor protections in bankruptcy law and its scope in protecting debtors and

debtor property is broad." Cousins v. CitiFinancial Mortgage Co. (In re Cousins), 404 B.R. 281, 286 (Bankr. S.D. Ohio 2009) (citations omitted). By stopping "all collection efforts, all harassment, and all foreclosure actions," the stay "gives the debtor a breathing spell" from creditors and "permits the debtor to attempt a repayment or reorganization plan" or to simply "be relieved of the financial pressures that drove him into bankruptcy." In re Robinson, 764 F.3d at 559 (quoting H.R. Rep. No. 95-595, at 340 (1978), 1978 U.S.C.C.A.N. 5963, 6297).

"Requests for relief" from the automatic stay are governed by § 362(d), which provides, in relevant part, that "[o]n request of a party in interest . . . the court shall grant relief from the stay . . . such as by terminating, annulling, modifying, or conditioning such stay": (1) "for cause, including the lack of adequate protection of an interest in property" or, (2) with respect to acts against property, if "the debtor does not have equity in such property" and the "property is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(1) & (2). The Court speaks through its orders; thus, to grant a request for relief from the stay under § 362(d), the Court must enter a written order. See Bell v. Thompson, 545 U.S. 794, 805, 125 S. Ct. 2825, 2832 (2005) ("Basic to the operation of the judicial system is the principle that a court speaks through its judgments and orders.") (quoting Murdaugh Volkswagen, Inc. v. First National Bank of South Carolina, 741 F.2d 41, 44 (4th Cir. 1984)); In re Markey, 144 B.R. 738, 745 (Bankr. W.D. Mich. 1992) ("It is axiomatic that a court speaks through its orders.").

Like most other requests for relief, requests for an order granting relief from stay are to be made by the filing of a written motion. See Fed. R. Bankr. P. 9013 (a "request for an order" with few exceptions "shall be by written motion"); Fed. R. Bankr. P. 9014 (in

contested matters, "relief shall be requested by motion").  Bankruptcy Rule 4001(d) provides that parties may also seek a court order approving agreed relief, including modification or termination of the stay, by filing a motion.  Local Bankruptcy Rule 4001-1(d) expressly states that motions for relief from the automatic stay may be resolved by filing a stipulated settlement of the motion.  See LBR 4001-1(d); see also LBR 4001-3 (governing Motions for Approval of Agreed Relief).  The Court acknowledges that it not uncommon for parties in this district to file an agreed-upon stipulation, not accompanied by a formal motion, which seeks relief from the Court.  Thus, under appropriate circumstances, relief from stay might be "requested" by the filing of a stipulation.

The agreement between Chemical and the Debtor, which was incorporated into the Plan, did not constitute a "request for relief" as contemplated by § 109(g)(2).  The agreed Plan provision established a schedule for repayment of Chemical's secured claim. It also provided that, in the event of an uncured default in those payments, Chemical could seek an order lifting the automatic stay by filing an affidavit of default with the Court. By agreeing that Chemical would be "automatically entitled" to such an order, the Debtors essentially agreed to an expedited process for future relief from stay under § 362(d), and that the Debtors would not contest such relief if the Debtors were in default.

In § 109(g)(2), Congress established a bright line for purposes of determining when a debtor is rendered ineligible to file a subsequent case.  Congress explicitly tied a debtor's subsequent ineligibility to a creditor first having filed a request for relief in the prior case, generally done by motion and always for purposes of obtaining an order for relief from the automatic stay.  Here, the only triggering mechanism for the issuance of an order for relief from the stay was the filing of the affidavit by Chemical.  Accordingly,

the Court finds that the "request for relief" from stay occurred when Chemical filed its affidavit of default with the Court.

This question, as it relates to AFM, is slightly more nuanced because prior to incorporation of their agreement in the confirmed Plan, AFM and the Debtors filed a separate Stipulation regarding the treatment of AFM's claim. As previously noted, a stipulation may, in appropriate circumstances, be considered a "request for relief." However, the § 109(g)(2) analysis requires the Court to determine not only whether AFM filed a "request for relief," but more specifically, whether the AFM Stipulation should be deemed a "request for relief from the automatic stay." The Court concludes that it should not.

The AFM Stipulation resolved many outstanding issues in the case: it waived the Debtors' claims against AFM concerning the potential invalidity of its mortgages and security interest; it provided AFM a continuing security interest under § 552; it awarded AFM post-petition interest under § 506(b); and it provided AFM's consent to use cash collateral. Perhaps most importantly, it established a repayment schedule and payment terms for the loans owed by the Debtors to AFM. Finally, it provided that if the Debtors defaulted in their payments to AFM, and failed to cure the default after notice, AFM could file an affidavit of default with the Court. Upon the filing of the affidavit, the Stipulation provided that AFM would be automatically entitled to an order lifting the automatic stay, without the necessity of a hearing.

Although the title of the Stipulation states that it governs adequate protection and treatment of AFM's claim, the substance of the agreement suggests that the focus of the agreement was the treatment of AFM's secured claim under the Plan. See, e.g., In re

<u>Gasel Transp. Lines, Inc.</u>, 326 B.R. 683, 693 (6th Cir. B.A.P. 2005) (Gregg, J., concurring) (the relief sought by a party should be "determined by substance, not a label").  The Stipulation provides that any pre-confirmation payments will be deemed to be adequate protection; only one payment due under the Stipulation was to be made prior to confirmation.[7]  It is not clear from the record whether this payment was made by the Debtor or whether it was incorporated into the terms of the amended Stipulation.  When the substance of the Stipulation is examined, it is clear that the Stipulation was not a resolution of a pending request for relief from the stay.  Instead, like the Chemical agreement, the AFM Stipulation provided for periodic payments to be made to AFM and an expedited process by which AFM could seek an order lifting the stay in the future if the Debtors defaulted on their payments.[8]

---

[7]     The Stipulation specifically states that this payment, due on December 1, 2013, was to be made "to bring all of AFM's loans current."  Given this designation, the Court questions whether this payment is properly characterized as adequate protection.  Regardless of how the payment is viewed, it does not change Court's conclusion about the overall nature of the Stipulation.  The continuation of the stay was not conditioned upon that pre-confirmation payment being made, and failure to make that payment would not have caused automatic termination of the stay without further Court order.

[8]     In this way, the AFM Stipulation is distinguishable from a true "drop dead" provision.  A "drop dead" provision conditions the automatic stay by "allowing a creditor to exercise its state law remedies upon a default of a debtor under a plan without seeking *further* permission from the bankruptcy court."  <u>In re Mendoza</u>, 111 F.3d 1264, 1269 (5th Cir. 1997) (quoting <u>In re Kennedy</u>, 177 B.R. 967, 975 (Bankr. S.D. Ala. 1995)).
    The Creditors in this case could have included a true "drop dead" clause in the Stipulation or Plan provision.  They could also have negotiated other "automatic" relief from stay, such as requesting that deeds in lieu of foreclosure be prepared and held in escrow.  They did not do so.  Neither the Stipulation nor the Plan provision provided for an immediate termination of the stay upon default.  Rather, the Creditors were required to file an affidavit of default to obtain a Court order lifting the stay.  The filing of the affidavit was the "request for relief" from stay.

Until the Court entered an order for relief from stay, neither AFM nor Chemical could exercise their state law remedies to foreclose on their collateral; the stay remained in place.[9]  In the Stipulation and Plan, the Debtors agreed to a process that would allow the Creditors to seek relief from stay on an expedited basis, without notice and hearing, by filing an affidavit of default with the Court.  In § 109(g)(2), Congress provided that a debtor would only be ineligible in a subsequent case if the debtor requested and obtained voluntary dismissal of the first case "following a request for relief" from stay.  The better interpretation here is that the request for relief from stay occurred with the filing of the affidavits.  The affidavits, not the earlier Stipulation or the Plan language, were the requests that would trigger the issuance of a Court order terminating the stay.

The conclusion that the filing of the affidavits of default constituted the "requests for relief" in the prior case is also consistent with Andersson v. Fed. Sav. & Loan (In re Andersson), 209 B.R. 76 (6th Cir. B.A.P. 1997).  In Andersson, the Sixth Circuit Bankruptcy Appellate Panel noted that § 109(g)(2), like other statutes, is to "be read in a 'straightforward' and 'commonsense' manner."  Andersson, 209 B.R. at 78 (quoting Rogers v. Laurain (In re Laurain), 113 F.3d 595 (6th Cir. 1997)) (additional citations omitted).  When "an unambiguous and plain meaning" can be discerned from the statutory language, the court's "task is at an end."  Id.  A straightforward reading of § 109(g)(2) requires the creditor to file a motion, or other document, seeking relief from the stay with the Court.  There is no reason to look further than the language of § 109(g)(2). While the purpose of this provision is to prevent debtors from manipulating the automatic stay by

---

[9]    The Plan generally provided that "[t]he automatic stay shall remain in full force and effect under [sic] further order of the Court."  (See Debtors' Chapter 12 Plan, Case No. 13-06904, Dkt. No. 58, Article XIII, at 18.)

filing a case and then dismissing it, the statute is also crystal clear that the check on the debtor's ability to do so is triggered by the creditor first requesting relief from the automatic stay. See, e.g., In re Santana, 110 B.R. 819, 821-22 (Bankr. W.D. Mich. 1990) (denying creditor's motion to dismiss chapter 13 case because creditor had not filed motion for relief from stay in first case and there was no evidence that debtor was attempting to "string out" creditor's alleged secured claim; "When a debtor's factual pattern does not fit precisely within the confines of 11 U.S.C. § 109(g), the creditor bears a heavy burden to succeed in a dismissal motion based upon multiple filings of the debtor.") (quoting In re Samuel, 77 B.R. 520 (Bankr. E.D. Pa. 1987)).  This is the manner in which Congress chose to balance a debtor's right to seek a "fresh start" with the secured creditor's right to enforce its state law rights in the property. See generally In re Schafer, 689 F.3d 601, 616 (6th Cir. 2012) ("As the Supreme Court has repeatedly noted, the goal of the Bankruptcy Code is to provide debtors in bankruptcy with a fresh start.") (citing Marrama v. Citizens Bank of Mass., 549 U.S. 365, 367, 127 S. Ct. 1105 (2007)).

Finally, the Court's straightforward application of § 109(g)(2) does not lead to an absurd result in this case.  While this case is the Debtors' second filing, there is no evidence before the Court that the Debtor has engaged in abuse by dismissing the prior case and re-filing the current case.  Indeed, debtors may have unforeseen circumstances that require them to dismiss a case and re-file shortly thereafter.  There are no facts before the Court which would lead it to find that the Debtors were abusing the bankruptcy system or engaging in conduct that would otherwise place the Debtors' eligibility in question.

Absent evidence of such conduct, the Court is not willing to infer that the Debtors have acted in bad faith.[10]

For the foregoing reasons, the Court concludes that the filing of the affidavits of default constituted the requests for relief from stay in the prior chapter 12 case.

B.   Did the Debtors Seek and Obtain Dismissal of the Prior Case "Following" the Creditors' Request for Relief from Stay?

There is a split of authority as to whether § 109(g)(2)'s requirement that a debtor's request for dismissal be made "following" the creditor's request for relief from stay imposes a mandatory, temporal requirement or whether some causal connection between the two events must be established. In Andersson, the Sixth Circuit B.A.P. adopted a "mandatory" approach and held that § 109(g)(2) "imposes a 180-day bar to refiling on any debtor who obtains a voluntary dismissal after a creditor has requested relief from the automatic stay, regardless of the debtor's good faith or whether there was any connection between the debtor's voluntary dismissal and the creditor's request." Andersson, 209 B.R. at 77-78. Other courts have also applied § 109(g)(2) according to its plain meaning, but have noted that "following" as used in § 109(g)(2) is most accurately defined as "as a result of," thereby indicating some type of causal relationship. In re Payton, 481 B.R. 460, 465-66 (Bankr. N.D. Ill. 2012) (explaining that § 109(g)(2) "uses 'following' to establish a relationship between two discrete events:  the debtor's voluntary dismissal . . . and a request for relief from the automatic stay").

---

[10]   In pleadings filed in the prior case, Chemical explicitly stated that it did not allege, at the time, that the Debtors acted in bad faith by seeking dismissal of their case. (Case No. 13-06904, Dkt. No. 205, at 4 n.2.)

In this case, the Court has determined that the Creditors requested relief from stay when they filed their affidavits of default with the Court.  It is undisputed that the Debtors filed their motion to voluntarily dismiss their prior case before either AFM or Chemical filed its affidavit of default.  Given this fact, the Court need not decide how the term "following" should be construed.  Regardless of whether a strictly temporal definition is used or whether a causal connection is required, the Debtors' motion was filed before – not "following" – the requests for relief from stay.  See, e.g., In re Andersson, 209 B.R. at 77 (§ 109(g)(2) requires dismissal any time a prior case was voluntarily dismissed "after a creditor requested relief from the automatic stay"); In re Payton, 481 B.R. at 464 n.2 (noting that the "causal meaning of 'following' involves a time sequence – the cause necessarily takes place before its effect").

## V.   CONCLUSION.

For the foregoing reasons, the Creditors have failed to establish that the Debtors sought and obtained dismissal of their prior case following requests for relief from stay so as to trigger the 180-day on re-filing under § 109(g)(2).  The Debtors are eligible for Chapter 12 relief and the Creditors' motions to dismiss are denied.  A separate order shall be entered accordingly.

**IT IS SO ORDERED.**

**Dated June 23, 2015**



James W. Boyd
United States Bankruptcy Judge